### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

```
-------------------------------x
                                :
SAB TECHNOLOGY, LLC,            :
                                :
          Plaintiff,            :
                                :
v.                              :    Civ No. 3:01CV00084(AWT)
                                :
PORT INCORPORATED,              :
                                :
          Defendant.            :
                                :
-------------------------------x
                                :
PORT INCORPORATED,              :
                                :
          Counterclaim          :
          Plaintiff,            :
                                :
v.                              :
                                :
SAB TECHNOLOGY, LLC and         :
HAROLD FISCHEL,                 :
                                :
          Counterclaim          :
          Defendants.           :
                                :
-------------------------------x
```

### RULING ON MOTION FOR SUMMARY JUDGMENT

The plaintiff, SAB Technology, LLC ("SAB"), brings this
patent infringement action alleging that defendant Port
Incorporated ("Port") has infringed on United States Patent
No. 5,909,806 (the "'806 Patent"), and seeking relief under 35
U.S.C. §§ 284 and 285, and the defendant has filed two
counterclaims.  The defendant has moved for summary judgment on
the plaintiff's claim, and the defendant's motion is being
granted.

I.    **FACTUAL BACKGROUND**

   **A.    The '806 Patent**

   The '806 Patent is entitled "Laptop Carrying Case."  On November 13, 1995, co-inventors Harold Fischel and Anthony Handal submitted their original patent application to the U.S. Patent and Trademark Office ("PTO").  The applicants then abandoned that initial application in favor of a "continuation-in-part" application ("CIP"), which was filed on October 7, 1996.  The PTO Examiner rejected that application on December 18, 1997, principally due to the indefiniteness and/or obviousness of the claims contained therein.  Specifically, the PTO Examiner rejected Claims 9, 11, 13, 14, 17, 20, 22, 31, 32, 34, 42-48 and 50 under 35 U.S.C. § 112 as being "indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention." (Speranza Declaration (Doc. No. 75) ("Speranza Decl."), Ex. D.)  Additionally, claims 11, 17, 20, 31 and 32 were rejected "under 35 U.S.C. § 102(b) as anticipated by or, in the alternative, under 35 U.S.C. § 103 as obvious over [U.S. Patent No. 4,339,039]." (Speranza Decl., Ex. D.)  The PTO Examiner noted with respect to U.S. Patent No. 4,339,039 (the "Mykelby Patent") that:

> Mykelby teaches a container (8) for carrying and protecting fragile articles such as electronic equipment and the like comprising at least one bladder (10) filled with a piece of flexible foam (11) and a cover (17) constructed of non-porous plastic.  Each bladder has at least one hole (20) for the discharge of air in response

2

to the application of force such as by dropping the
container.

(Speranza Decl., Ex. D.)  Port has exclusive rights, title and
interest in the Mykelby Patent.

On March 19, 1998, the applicants responded to the PTO
Examiner's rejection of the claims in the CIP by amending claims
17, 31 and 42.[1]  Claim 17, as twice amended, read in pertinent
part as follows:

> A computer case <u>having a bottom and a pair of sides</u>
> comprising [an] <u>a flexible</u> outer shell and a shock
> absorbing member, . . . <u>said computer case further</u>
> <u>comprising relatively stiff members extending along said</u>
> <u>sides and said bottom of said case, said shock absorbing</u>
> <u>member being disposed between a computer contained</u>
> <u>within said case and said relatively stiff members.</u>

(Speranza Decl., Ex. F.)

Claim 31, as amended, read in pertinent part as follows:

> A shock absorbing structure, comprising a case, <u>having</u>
> <u>a bottom and a pair of sides,</u> for containing a device to
> be protected from the shock of mechanical forces . . .
> <u>said computer case further comprising a relatively stiff</u>
> <u>member extending along said sides and said bottom, said</u>
> <u>relatively stiff member being formed by a pair of wires</u>
> <u>with a stiff polymeric member disposed between them.</u>

(Speranza Decl., Ex. F.)

Claim 42, as amended, read in pertinent part as follows:

> In a briefcase of the type which includes a compartment
> portion made of a fabric-like briefcase material, a cap
> portion made of fabric-like briefcase material hinged to
> said compartment portion and a closure for securing said
> compartment portion to said cap portion, said

---

[1] In statement below of Claims 17, 31 and 42, the language
that was added by the March 19, 1998 Amendment is underlined.

3

compartment portion and said cap portion being configured and dimensioned to contain an object to be protected from shock, . . . <u>said computer case further comprising a relatively stiff member extending along said side edges of said briefcase and said bottom edge of said briefcase, said relatively stiff member being formed by a pair of wires with a stiff polymeric member disposed between them.</u>

(Speranza Decl., Ex. F.)

In an Office Action Summary dated May 31, 1998, the PTO Examiner - while continuing to reject the broader claims of the amended application - indicated that those claims that were drawn specifically to the air bladder shock absorbing system in combination with the structural feature of a stiff reinforcing member made up of a pair of wires extending along the bottom and sides of the case (i.e., 31, 32, 34, 42-48 and 50) would be allowable if rewritten to satisfy the requirements of 35 U.S.C. § 112.  In response, the applicants submitted another Amendment, dated, September 8, 1998, in which they sought approval of Claim 17 (three times amended), Claim 31 (twice amended) and Claim 42 (twice amended).[2]  These three claims, as amended, eventually issued as Claims 1, 4 and 7, respectively, of the '806 Patent.  In support of their amended claims, the applicants stated, <u>inter alia</u>, that:

---

[2] The Amendment also sought approval of Claim 22 (twice amended).  However, Claim 22, which eventually issued as Claim 3 of the '806 Patent, is not relevant to the court's analysis of the instant motion.

4

Claim 17 has been rewritten to include the limitation
"said relatively stiff member being formed by a pair of
wires with a stiff plastic member disposed between
them." . . . Certainly, there is not the remotest
suggestion in the prior art that this stiff member can
be made by a pair of wires and a relatively stiff
plastic member disposed between them.

(Speranza Decl., Ex. G.)

The '806 Patent issued on June 8, 1999.  The abstract for
the '806 Patent states that it relates to a "shock absorbing
structure" comprising a "bladder" filled with a resilient
deforming material and having an "air release member" to allow
for discharge of air when a force is applied to the bladder.  The
Summary of the Invention states that "[the invention] solves the
problem of how to provide for the absorption of impacts
experienced by a laptop computer during a fall or other similar
experience."  (Speranza Decl., Ex. A.)  Claims 1, 4 and 7 of the
'806 Patent are the only independent claims advanced therein.[3]
Claim 1 reads as follows:

A computer case having a bottom and a pair of sides
comprising a flexible outer shell and a shock absorbing
member, said shock absorbing member comprising a
bladder, <u>the inside of</u> said bladder being in
communication with <u>the outside atmosphere through at
least one opening dimensioned to discharge an amount of
air sufficient to</u> result in substantial but not complete
deflation of said bladder in response to a mechanical
force <u>applied to said bladder when said computer case is
dropped</u>, said computer case further comprising
relatively stiff members extending along said <u>pair of
side<u>s</u> and <u>said</u> bottom of said case, <u>said relatively</u>

_____

[3] In the statement below of Claims 1, 4, and 7, the language
that was added by the September 8, 1998 Amendment is underlined.

5

<u>stiff member being formed by a pair of substantially</u>
<u>rigid elongated members with a stiff plastic member</u>
<u>disposed between them</u>, said shock absorbing member being
disposed between a computer contained within said case
and said relatively stiff member.

(Speranza Decl., Exs. A, G.)

Claim 4 reads in pertinent part as follows:

A shock absorbing structure, comprising a case, having
a bottom and a pair of sides, for containing a device to
be protected from the shock of mechanical forces, said
case comprising a bladder having an undeformed shape, .
. . said bladder being positioned between a space in
said case intended for said device to be protected and
an expected point of application of a mechanical force
from which shock protection is desired, said bladder
defining a<u>t least one</u> hole for the discharge of air in
response to the application of force to said bladder,
. . . said case further comprising a relatively stiff
member extending along all said sides and said bottom,
said relatively stiff member being formed by a pair of
wires with a stiff <u>plastic</u> member disposed between them.

(Speranza Decl., Exs. A, G.)

Claim 7 reads in pertinent part as follows :

In a briefcase of the type which includes a compartment
made of a fabric-like briefcase material, a cap portion
made of fabric-like briefcase hinged to said compartment
portion and a closure for securing said compartment
portion to said cap portion, . . . said briefcase
further comprising a relatively stiff member extending
along said side edges of said briefcase and said bottom
edge of said briefcase, said relatively stiff member
being formed by a pair of wires with a stiff plastic
member disposed between them.

(Speranza Decl., Exs. A, G.)

**B.  The Accused Port Products**

The Port Commuter 2.1 and the Port Mobile Elite 2.1 are

each upright ("drop-in") multi-compartment laptop computer

6

carrying cases.  In relevant part, the computer-carrying compartment of the case is defined by a bottom segment (101) (which is a horizontal segment with reference to the normal upright orientation of the case); two opposed, upstanding side ("gusset") segments (102) and (103) (which are thus vertical segments in this upright case orientation), formed of fabric material; and spaced-apart front and back planar face panel segments (104) and (105) extending from the edges of the bottom and side segments.  Plastic perimeter frame-like components (106) and (107) border the front and back face panel segments. The inside surface of the computer-carrying compartment bottom segment (101) has arranged in it a removable, fabric-covered plastic strip (108).

Each of the cases comes with a pair of cushion strips (110) and (111), each cushion strip being in turn made up of two separate cushions (112) and (113).  Each cushion is made of compressible foam enclosed in a pliable cover, and has two air vents in the cover.  The cushion strips are flexible and are bent into a L-shaped configuration when placed inside the computer-carrying compartment.  In this way, the cushion (112) of each strip resides horizontally in contact with a portion of the fabric-covered plastic strip (108) along the inside of the bottom segment of the compartment, while the other cushion (113) of each strip is vertically affixed in contact with, or in the general

vicinity of, the inside surfaces of the respective side walls (102) and (103) of the compartment.  One of the cushion strips (111) also has affixed to a portion of the back of it a fabric-covered plastic strip (114), running generally the length of the vertically-oriented cushion (113) of this cushion strip.  As a result, in the L-shaped configuration and arrangement of this particular cushion strip (111) inside the computer-carrying compartment, one of the side walls (103) may have this fabric-covered plastic strip (114) either in contact with, or in the general vicinity of, its inside surface.  There is no such plastic strip associated with the other cushion strip (110), and thus there is no such plastic strip (or any other plastic strip or segment) in contact with or in the vicinity of the inside surface of the other side segment (102) of the compartment.

## II.   LEGAL STANDARD

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law.  Fed. R. Civ. P. 56(c).  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir. 1994).  Rule 56(c) "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element

8

essential to that party's case, and on which that party will bear the burden of proof at trial."  See Celotex Corp., 477 U.S. at 322.

When ruling on a motion for summary judgment, the court must respect the province of the jury.  The court, therefore, may not try issues of fact.  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975).  It is well-established that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge."  Anderson, 477 U.S. at 255.  Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined . . . to issue-finding; it does not extend to issue-resolution."  Gallo, 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact. Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  An issue is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248

9

(internal quotation marks omitted).  A material fact is one that would "affect the outcome of the suit under the governing law." Id.  As the Court observed in Anderson: "[T]he materiality determination rests on the substantive law, [and] it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs."  Id.  Thus, only those facts that must be decided in order to resolve a claim or defense will prevent summary judgment from being granted.  When confronted with an asserted factual dispute, the court must examine the elements of the claims and defenses at issue on the motion to determine whether a resolution of that dispute could affect the disposition of any of those claims or defenses. Immaterial or minor facts will not prevent summary judgment.  See Howard v. Gleason Corp., 901 F.2d 1154, 1159 (2d Cir. 1990).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in its favor."  Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Del. & Hudson Ry. Co. v. Consol. Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990)).  Because credibility is not an issue on summary judgment, the nonmovant's evidence must be accepted as true for purposes of the motion. Nonetheless, the inferences drawn in favor of the nonmovant must be supported by the evidence.  "[M]ere speculation and

10

conjecture" is insufficient to defeat a motion for summary judgment.  <u>Stern v. Trustees of Columbia Univ.</u>, 131 F.3d 305, 315 (2d Cir. 1997) (<u>quoting</u> <u>Western World Ins. Co. v. Stack Oil, Inc.</u>, 922 F.2d 118, 121 (2d. Cir. 1990)).  Moreover, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position" will be insufficient; there must be evidence on which a jury could "reasonably find" for the nonmovant.  <u>Anderson</u>, 477 U.S. at 252.

Finally, the nonmoving party cannot simply rest on the allegations in its pleadings since the essence of summary judgment is to go beyond the pleadings to determine if a genuine issue of material fact exists.  <u>See</u> <u>Celotex Corp.</u>, 477 U.S. at 324.  "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact," <u>Weinstock</u>, 224 F.3d at 41, if the movant demonstrates an absence of such issues, a limited burden of production shifts to the nonmovant, which must "demonstrate more than some metaphysical doubt as to the material facts, . . . [and] must come forward with specific facts showing that there is a genuine issue for trial."  <u>Aslanidis v. United States Lines, Inc.</u>, 7 F.3d 1067, 1072 (2d Cir. 1993) (quotation marks, citations and emphasis omitted).  Furthermore, "unsupported allegations do not create a material issue of fact." <u>Weinstock</u>, 224 F.3d at 41.  If the nonmovant fails to meet this burden, summary judgment should be

11

granted.  The question then becomes:  is there sufficient evidence to reasonably expect that a jury could return a verdict in favor of the nonmoving party.  See Anderson, 477 U.S. at 248, 251.

## III.  DISCUSSION

    "An infringement analysis is a two-step process in which the court first determines, as a matter of law, the correct claim scope, and then compares the properly-construed claim to the accused device to determine, as a matter of fact, whether all of the claim limitations are present, either literally or by a substantial equivalent, in the accused device."  Johnson Worldwide Assoc's v. Zebco Corp., 175 F.3d 985, 988 (Fed. Cir. 1999) (Citations omitted).  "[C]laim construction requires [courts] to examine all the relevant sources of meaning in the patent record, . . . includ[ing] the patent's claims, specification and, if in evidence, its prosecution history." Athletic Alternatives, Inc. v. Prince Mfg., Inc., 73 F.3d 1573, 1578 (Fed. Cir. 1996).  "Absent an express definition in the specification of a particular claim term, the words are given their ordinary and accustomed meaning; if a term of art, it is given the ordinary and accustomed as understood by those of ordinary skill in the art."  Zelinski v. Brunswick Corp., 185 F.3d 1311, 1315 (Fed. Cir. 1999).

12

Here, there is no genuine issue as to the composition of the accused Port products.  SAB has presented no evidence as to the composition of the accused products, choosing instead to rely on the declaration of Charles R. Sperry, an expert in the art of protective packaging retained by Port to provide analyses and expert opinions about the issues raised in this case.  Because "the parties do not dispute any relevant facts regarding the accused product[s] but disagree over [claim interpretation], the question of literal infringement collapses to one of claim construction and is thus amenable to summary judgment."  Athletic Alternatives, Inc., 73 F.3d at 1578.  See also Environetics, Inc. v. Millipore Corp., 923 F. Supp. 344, 346 (D. Conn. 1996) ("disputes over claim construction, even where claim construction appears to involve factual issues, are issues for the court and may be resolved on a summary judgment motion").

After determining the scope of the claims in the '806 Patent, the court compares those claims to the accused Port products and concludes that all of the limitations of the claims are not present literally in the accused products.  Because it is difficult to tell precisely what arguments SAB makes in its opposition, including what the scope of SAB's argument is with respect to the doctrine of equivalents, the court also analyzes the accused products under that doctrine and concludes that all

of the limitations of the claims in the '806 Patent are not
present by substantial equivalent in the accused Port products.

**A.    Claim Construction of the '806 Patent**

Defendant Port properly identifies Claims 1, 4 and 7 as the
only independent claims contained in the '806 Patent.  Because
"[a] claim in dependent form shall be construed to incorporate by
reference all the limitations of the claim to which it refers,"
the court need only analyze the '806 Patent's independent claims.
See 35 U.S.C. § 112; Wahpton Canvas Co. v. Frontier, Inc., 870
F.2d 1546, 1552 n.9 (Fed. Cir. 1989) ("One who does not infringe
an independent claim cannot infringe a claim dependent on (and
thus containing all the limitations of) that claim.").

A pivotal issue here is whether Claims 1, 4 and 7 require
that the "stiff plastic member" recited in each claim extend
along the bottom and both sides of the laptop carrying case.  In
interpreting a patent claim, "[t]he general rule is, of course,
that terms in the claim are to be given their ordinary and
accustomed meaning . . . [A] court must presume that the terms in
the claim mean what they say, and unless otherwise compelled,
give full effect to the ordinary and accustomed meaning of claim
terms."  Johnson Worldwide Assoc's., 175 F.3d at 989 (internal
citations omitted).

Claim 1 reads in pertinent part as follows:

. . . said computer case further comprising relatively
stiff members extending along said pair of sides and

14

said bottom of said case, said relatively stiff member being formed by a pair of substantially rigid elongated members with a stiff plastic member disposed between them . . . .

Claim 4 reads in pertinent part as follows:

. . . said case further comprising a relatively stiff member extending along all said sides and said bottom, said relatively stiff member being formed by a pair of wires with a stiff plastic member disposed between them.

Claim 7 reads in pertinent part as follows:

. . . said briefcase further comprising a relatively stiff member extending along said side edges of said briefcase and said bottom edge of said briefcase, said relatively stiff member being formed by a pair of wires with a stiff plastic member disposed between them.

Based on the ordinary and accustomed meaning of the terms, the proper conclusion is that the "relatively stiff member" extends along the bottom and both sides of the carrying case, and that the component parts of that "relatively stiff member" are a pair of wires (or in Claim 1, a pair of substantially elongated members) and a stiff plastic member, which is disposed between the pair of wires (or in Claim 1, a pair of substantially elongated members). Thus, it is also the proper conclusion that the components that form the relatively stiff member (i.e., the pair of wires (or in Claim 1, the pair of substantially elongated members) and the stiff plastic member) also extend along the bottom and both sides of the carrying case. The plain language of the claims allows for no other reasonable interpretation.

15

The plaintiff fails to proffer any interpretation of the claim language to dispute that urged by the defendant.  Without addressing at all the defendant's analysis of the construction of the plain language of the claims, the plaintiff simply argues that the scope of each claim is "computer cases with 'relatively stiff members.'" (Plaintiff's Opposition (Doc. No. 80) ("Plaintiff's Opp.") at 12).  However, such a construction reads out of the claims the explicit limitations that were added to overcome the PTO Examiner's rejection of the application.

The plaintiff also argues that the specification, which appears to narrow the scope of the claims by suggesting a preferred embodiment, should not be "read into the claims."[4] (Plaintiff's Opp. at 8) (citing Wenger Mfg. Inc. v. Coating Mach. Sys. Inc., 239 F.3d 1225, 1233 (Fed. Cir. 2001).)  However, in arriving at the claims construction set forth above, the court did not read the preferred embodiment into the claims.  There are no alternative theories presented here as to the plain meaning of the "stiff plastic member" limitation recited in Claims 1, 4 and 7 of the '806 Patent.  It is therefore unnecessary to look to the specification and/or prosecution history for guidance in interpreting the claim language.  The plain meaning of the

---

[4] The specification to the '806 Patent contemplates a preferred embodiment in which "four bladders **514** are supported within a single continuous wrap around bendable, but relatively stiff plastic member **520**, which extends completely around the perimeter of bag **510**." (Speranza Aff., Ex. A) (emphasis added).

language in the claims is what establishes that the "stiff plastic member" extends along the bottom and <u>both</u> sides of the case.

Nor is this a situation where the accused infringer urges the court to adopt a narrower construction of the claims' terms than their plain meaning supports.  In fact, Port states that "there are no such expressions of the applicants' intent to depart from the ordinary meaning of the claim language." (Defendant's Memorandum (Doc. No. 73) at 15.)

Accordingly, the court concludes, based on the ordinary and accustomed meaning of the terms set forth in Claims 1, 4 and 7, that each claim requires that the stiff plastic member extend along the bottom and both sides of the case.

### B.   Literal Infringement

Port contends that one could not reasonably conclude that its products literally infringe on the '806 Patent.  The court agrees, because the '806 Patent recites a laptop carrying case that contains a stiff plastic member along the bottom and <u>both</u> sides of the case.  Thus, the accused Port products do not literally infringe on the '806 Patent because they do not contain a stiff plastic member along both sides of the case.

"To prove literal infringement, the patentee must show that the accused device contains every limitation in the asserted claims."  <u>Mas-Hamilton Group v. LaGard Inc.</u>, 156 F.3d 1206, 1211

17

(Fed. Cir. 1998).  "If, however, even one limitation is missing or not met as claimed, there is no literal infringement." Microstrategy Inc. v. Business Objects, S.A., 429 F.3d 1344, 1352 (Fed. Cir. 2005).

Each of Claims 1, 4 and 7 of the '806 Patent contains the limitation that a "stiff plastic member" be a component of the "relatively stiff member" disposed between a pair of substantially elongated members (Claim 1) or a pair of wires (Claims 4 and 7) and extend "along said pair of sides and said bottom of case" (Claim 1), or "along said sides and said bottom" of the case (Claim 4), or "along said side edges of said briefcase and said bottom edge of said briefcase" (Claim 7) (emphasis added).  The undisputed facts establish that at least one side of Port's accused products does not contain a stiff plastic member.

> . . . [T]he Port® cases do not have a "stiff plastic member" on the bottom and both sides of the computer carrying compartment. There is, as noted, what might be considered a stiff plastic member residing along the bottom of the compartment, namely, fabric-covered component 108, and there is, as noted, what might be considered a stiff plastic strip along one side gusset segment (103) of the case in the form of the fabric-covered plastic strip 114 residing on the back side of the vertical portion of the cushion strip 111. However, there is no strip of any kind along the other side gusset segment 102 of the case. In addition, there is no structural element in the Port® cases that provides the equivalent for a stiff plastic member on the one side where none exists at all; the required element of the patented invention and its function are simply absent altogether in the Port® products.

18

Sperry Declaration (Doc. No. 76) ("Sperry Decl."), ¶ 18.)  Thus, the Sperry declaration, which has been largely adopted by SAB, establishes that there is no "stiff" or rigid element at all on one side of the accused Port products.

SAB contends that it is unable to admit or deny the assertion in the Sperry declaration that the accused Port products simply do not contain a stiff plastic member along one side of their carrying compartments.  SAB's failure to admit or deny this critical assertion does not create a genuine issue of material fact as to the composition of the accused products. Port has met its initial burden by providing evidence negating an essential element of SAB's infringement claim (i.e., that the accused products contain all the limitations of the infringed product).  See Edberg, et al. v. CPI - The Alternative Supplier, Inc., 156 F. Supp. 2d 190, 193-94 (D. Conn. 2001).  SAB has failed to meet the burden, which has now shifted to SAB, of presenting evidence that creates a genuine issue of fact as to the composition of the accused products, an issue on which it bears the ultimate burden of proof at trial.  See Ultra-Tex Surfaces, Inc. v. Hill Bros. Chem. Co., 204 F.3d 1360, 1364 (Fed. Cir. 2000); Novartis Corp. v. Ben Venue Lab's., Inc., 271 F.3d 1043, 1050-51 (Fed. Cir. 2001).

Because the undisputed facts establish that the allegedly infringed SAB laptop carrying case contains a limitation that is not present in either of the accused Port products, one could not reasonably conclude that the accused Port products literally

19

infringe on the '806 Patent.  See Mas-Hamilton, 156 F.3d at 1211
(if even one limitation is missing or not met as claimed, there
is no literal infringement).

    **C.   Doctrine of Equivalents**

    "Infringement lies under the doctrine [of equivalents] only
if an equivalent or a literal correspondence of every limitation
of the claim is found in the accused device.  An element is
equivalent if the differences between the element and the claim
limitation are insubstantial." Zelinski, 185 F.3d at 1316
(internal citations omitted) (citing Warner-Jenkinson Co. v.
Hilton Davis Chem. Co., 520 U.S. 17, 21 (1997)).  However,
"[t]here can be no infringement as a matter of law if a claim
limitation is totally missing from the accused device."  London
v. Carson Pirie Scott & Co., 946 F.2d 1534, 1539 (Fed. Cir.
1991).

    Sperry's conclusion that "there is no structural element in
the Port cases that provides the equivalent for a stiff plastic
member on the one side where none exists at all; the required
element of the patented invention and its function are simply
absent altogether in the Port products" (Sperry Decl., Ex. J), is
uncontested, and it establishes that there is no structural
equivalent to a stiff plastic member on one side of the computer
carrying compartment.  Although a determination of no literal
infringement does not bar the application of the doctrine of
equivalents, there can be no infringement as a matter of law
where a claim limitation is absent altogether from the accused

product.  See id.; Becton Dickinson Co. v. C.R. Bard, Inc., 922 F.2d 792, 798 (Fed. Cir. 1990).  The fact that a structural element that is equivalent to a limitation recited in Claims 1, 4 and 7 of the '806 Patent is simply not found in the accused Port products is fatal to any claim by SAB for relief under the doctrine of equivalents.

### D.   Port's Additional Arguments

Port advances additional arguments, which together cover all of Claims 1, 4 and 7, as to why it is entitled to summary judgment in SAB's claims, but the court need not reach them because Port's argument based on the fact that the stiff plastic member is not on both sides of the accused Port products disposes of SAB's claim with respect to all the independent claims in the '806 Patent.

### IV.  CONCLUSION

For the reasons set forth above, the defendant's Motion for Summary Judgment (Doc. No. 72) is hereby GRANTED.  The Clerk shall enter judgment in favor of defendant Port Incorporated on plaintiff SAB Technology, LLC's sole claim.  The only remaining claims in this case are Port Incorporated's two counterclaims.

It is so ordered.

Dated this 12th day of July 2006, at Hartford, Connecticut.


/s/  (AWT)
_____
Alvin W. Thompson
United States District Judge
